IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

CENTER FOR FOOD SAFETY, *et al.*

*Plaintiffs-Appellants*

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.*,

*Defendants-Appellees.*

On Appeal from the United States District Court
Northern District of California
No. 23-cv-2714-SI
Hon. Susan Illston

BRIEF OF CENTER FOR BIOLOGICAL DIVERSITY AS *AMICUS CURIAE*
IN SUPPORT OF PLAINTIFFS-APPELLANTS AND REVERSAL

JONATHAN EVANS
Center for Biological Diversity
2100 Franklin St., Suite 375
Oakland, CA 94612
Phone: (510) 844-7100 x318
jevans@biologicaldiversity.org

STEPHANIE M. PARENT
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97221
Phone: (971) 717-6404
sparent@biologicaldiversity.org

*Counsel for Amicus Curiae Center for Biological Diversity*

## RULE 26.1 DISCLOSURE STATEMENT

*Amicus Curiae* Center for Biological Diversity has no parent companies and no publicly held company has a ten percent or greater ownership in Center for Biological Diversity.

July 16, 2025

*/s/ Stephanie M. Parent*
Stephanie M. Parent

Counsel for *Amicus Curiae*
Center for Biological Diversity

# TABLE OF CONTENTS

INTERESTS OF AMICUS CURIAE........................................................................1

ARGUMENT ..........................................................................................................3

SEED BAG TAGS ARE NOT ENFORCEABLE, AN IMPERATIVE FOR
PROTECTION OF ENDANGERED SPECIES .......................................................3

# TABLE OF AUTHORITIES

Cases

*Ctr. for Biological Diversity v. U.S. EPA*, Case No. 11-cv-0293-JCS, Order Entering Stipulated Settlement Agreement, ECF 413 (Order) (N.D. Cal. 2023)................................................................................................2

*Ctr. for Biological Diversity v. U.S. EPA,* No. 20-73146, 2022 U.S. App. LEXIS 19795 (9th Cir. July 18, 2022)................................................................2

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 772 F. Supp. 3d 1074 (D. Ariz. 2025)....................................................................................2

*Farmworker Ass'n of Fla. v. EPA*, No. 21-1079, 2021 U.S. App. LEXIS 16882 (D.C. Cir. June 7, 2021)..................................................................2

*In re Ctr. for Biological Diversity*, 459 U.S. App. D.C. 271, 53 F.4th 665 (D.C. Cir. 2022) ..................................................................................2

Statutes

7 U.S.C. § 136a(a)...............................................................................................6
7 U.S.C. § 136a(c)(5)..........................................................................................6
7 U.S.C. § 136a(c)(5)(B).....................................................................................5
7 U.S.C. § 136a(c)(7)...........................................................................................6
7 U.S.C. § 136j(a)(2)(G)......................................................................................6
7 U.S.C. § 136l.....................................................................................................6
7 U.S.C. §§ 136-136y..........................................................................................2
16 U.S.C. § 1536(a)(2).........................................................................................1
16 U.S.C. § 1536(b)(3).........................................................................................2
16 U.S.C. § 1536(b)(4).........................................................................................2

Rules

Fed. R. App. P. 29(a)(2).......................................................................................1

Regulations

50 C.F.R. § 156.10(i)(2)(ii)...............................................................................6, 7

# INTERESTS OF *AMICUS CURIAE*[1]

The Center for Biological Diversity ("Center") is a non-profit conservation organization that has worked for more than twenty years to obtain protections for imperiled species from harms caused by pesticides. The Center is dedicated to the protection of native species and their habitats through the application of science, policy, environmental law, and creative media. The Center has more than 1.8 million members and on-line activists who have interests in conserving endangered and threatened species through effective implementation of the Endangered Species Act ("ESA") and other laws.

In service of its mission to prevent the extinction and further the recovery of ESA-protected species, the Center relies heavily on enforcing federal agencies' compliance with Section 7 of the ESA, which mandates that federal agency actions must not jeopardize the continued existence of ESA-protected endangered and threatened species and other protective measures. 16 U.S.C. § 1536(a)(2). Agencies must assess the effects of their actions, and, if likely to adversely affect any protected species, consult with the U.S. Fish and Wildlife Service ("FWS") and the National Marine Fisheries Service ("NMFS"). *Id.* FWS and NMFS must

---

[1] All parties consented to the filing of this brief. Fed. R. App. P. 29(a)(2). This brief was authored and funded solely by the Center for Biological Diversity. No party or party's counsel authored or funded preparation or submission of this brief. No other person contributed money to fund preparation or submission of this brief.

provide their biological opinion on whether the action is likely to cause jeopardy and include mandatory terms and conditions to minimize harm to species. *Id*. § 1536(b)(3), (4). The Center has enforced the ESA in numerous pesticide cases involving federal agencies such as the U.S. Environmental Protection Agency ("EPA") and FWS, significantly advancing protections for species through court-ordered compliance with the ESA.[2]

The government is advocating to uphold its exemption of neonicotinoid-treated seeds from pesticide registration otherwise required by the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136 *et seq*. ("FIFRA"). This position is unlawful and highly detrimental to the Center's organizational mission to safeguard species because the use of neonicotinoid treated seeds immensely increases the risk of harm to endangered and threatened species. Under FIFRA, the only way to avoid jeopardy and minimize harm is through amendment

---

[2] *See, e.g., Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 772 F. Supp. 3d 1074 (D. Ariz. 2025) (holding FWS unreasonably delayed completion of ESA consultations concerning five pesticides); *Ctr. for Biological Diversity v. U.S. EPA*, Case No. 11-cv-0293-JCS, Order Entering Stipulated Settlement Agreement, ECF 413 (Order) (N.D. Cal. 2023) (ordering EPA to complete ESA assessments on numerous pesticides by dates certain); *In re Ctr. for Biological Diversity*, 459 U.S. App. D.C. 271, 53 F.4th 665 (D.C. Cir. 2022) (writ of mandamus requiring EPA to comply with the ESA concerning cyantraniliprole); *Ctr. for Biological Diversity v. U.S. EPA,* No. 20-73146, 2022 U.S. App. LEXIS 19795 (9th Cir. July 18, 2022) (ordered EPA to comply with the ESA concerning inpyrfluxam); *Farmworker Ass'n of Fla. v. EPA*, No. 21-1079, 2021 U.S. App. LEXIS 16882 (D.C. Cir. June 7, 2021) (vacatur of the use of aldicarb on citrus in Florida for ESA violation).

to the labels of *registered* pesticide products. The directions for use on these labels are legally enforceable, making them subject to civil and criminal penalties. EPA admits the seed bag tags on exempted neonicotinoid treated seeds are not enforceable, circumventing important protections for the environment and imperiled wildlife. EPA's failure to register neonicotinoid-treated seeds harms the Center because optional, *i.e.,* voluntary, use directions on seed bag tags are ineffective in protecting endangered species and their habitats. In this crucial way, registration of neonicotinoid-treated seeds is not "redundant" of registration of the products applied to the seeds, but necessary to avoid the unreasonable adverse effects of these products.

## ARGUMENT

## SEED BAG TAGS ARE NOT ENFORCEABLE, AN IMPERATIVE FOR PROTECTION OF ENDANGERED SPECIES

Endangered species are harmed by neonicotinoid-treated seeds, which are not fully regulated under FIFRA. As EPA admits, the "seed bag tags" (2-ER-322) are not enforceable as compared to enforceable labels on registered pesticide products. EPA's exemption removes the most important tool to ensure the impacts of these pesticides do not jeopardize the continued existence of endangered and threatened species—mandatory directions for use on enforceable labels that avoid or reduce species' harm from exposure.

The importance of mandatory, enforceable label directions for use of neonicotinoid-treated seeds to protect endangered species cannot be understated. EPA has determined that the majority of endangered and threatened species are likely to be adversely affected and current neonicotinoid uses jeopardize the continued existence of ESA protected species. Neonicotinoid-treated seeds make up a significant portion of the overall use of neonicotinoids.

In June 2022 EPA released three final Biological Evaluations determining the majority of ESA-protected species are likely to be adversely affected by uses of clothianidin, imidacloprid, and thiamethoxam and initiated the Section 7 consultations. EPA determined that uses of clothianidin are likely to adversely affect 1,225 endangered and threatened species (67%),[3] uses of imidacloprid are likely to adversely affect 1,445 endangered and threatened species (79%),[4] and uses of thiamethoxam are likely to adversely affect 1,396 endangered and threatened species (77%).[5] The tables summarizing these dire determinations, copied from the cited EPA documents, are provided in the Appendix at 1–3.

---

[3] EPA Clothianidin Biological Evaluation Executive Summary at 6. https://www.epa.gov/endangered-species/final-national-level-listed-species-biological-evaluation-clothianidin#executive-summary.
[4] EPA Imidacloprid Biological Evaluation Executive Summary at 5. https://www.epa.gov/endangered-species/final-national-level-listed-species-biological-evaluation-imidacloprid#executive-summary.
[5] EPA Thiamethoxam Biological Evaluation Executive Summary at 5-6. https://www.epa.gov/endangered-species/final-national-level-listed-species-biological-evaluation-thiamethoxam#executive-summary.

In 2023, EPA conducted further analysis and predicted that the continued existence of hundreds of ESA protected species is likely jeopardized from uses of these three neonicotinoids. EPA predicted uses of clothianidin are likely to jeopardize the continued existence of 166 ESA-protected species,[6] uses of imidacloprid are likely to jeopardize the continued existence of 199 ESA-protected species,[7] and uses of thiamethoxam are likely to jeopardize the continued existence of 204 ESA-protected species.[8] The tables summarizing these determinations, copied from the cited EPA documents, are provided in the Appendix at 1–3.

These EPA assessments show that avoidance or mitigation of effects to hundreds of species is necessary. The only way to ensure these measures are implemented is with mandatory directions for use on enforceable, registered pesticide labels. As EPA knows, "the label is the law" that is "legally enforceable" and provides "critical information about how to safely and legally handle and use pesticide products." EPA "Introduction to Pesticide Labels."[9]

---

[6] EPA "Imidacloprid, Thiamethoxam and Clothianidin: Draft Predictions of Likelihood of Jeopardy and Adverse Modification for Federally Listed Endangered and Threatened Species and Designated Critical Habitats (May 1, 2023) at 10 ("Draft Jeopardy Predictions"). https://www.epa.gov/system/files/documents/2023-05/ESA-JAM-Analysis.pdf.

[7] *Id.* at 9.

[8] *Id.*

[9] https://www.epa.gov/pesticide-labels/introduction-pesticide-labels. *See also* 7 U.S.C. § 136a(c)(5)(B) (registration approval requires labeling that complies with

FIFRA makes it unlawful "to use any registered pesticide in a manner inconsistent with its labeling." *Id*. § 136j(a)(2)(G). The "directions for use" on the label of each registered pesticide product must include the statement: "It is a violation of Federal law to use this product in a manner inconsistent with this labeling." 50 C.F.R. § 156.10(i)(2)(ii). FIFRA Section 12 mandates that violations are subject to civil penalties of up to $5,000 for each offense, or up to $50,000 and one-year imprisonment for knowing violations. 7 U.S.C. § 136l. The purpose of FIFRA, to register pesticides only if they meet statutory standards, includes that they will "not generally cause unreasonable adverse effects on the environment."[10] This statutory standard is implemented through legally enforceable labels on registered pesticide products, violation of which comes with severe consequences.

EPA admits that the seed bag tag instructions for use of unregistered neonicotinoid-treated seeds are not legally enforceable, literally making compliance with the instructions optional, voluntary, and, thus, ineffective. If a user of neonicotinoid-treated seeds does not comply with directions on the seed bag tag, "EPA agrees with the Petition that it is this misuse of an unregistered pesticide that is not currently enforceable under FIFRA section 12." 2-ER-361. Note that seed bag tags do not include language regarding legal violations that is

FIFRA requirements); *Id.* § 136a(f)(1) (label change requires amendment to registration if the change will not violate FIFRA).
[10] 7 U.S.C. §§ 136a(a), (c)(5), (c)(7).

required on labels of registered pesticide products by 50 C.F.R. § 156.10(i)(2)(ii).[11] As a result, users may ignore any directions for use on seed bag tags necessary to avoid or mitigate risks of harm to endangered or threatened species.

This is not a far-fetched supposition nor is it criticism of the intentions of users of neonicotinoid treated seeds. Many growers do not know the name of the seed treatment products used on crops such as cotton, corn, soybeans, and wheat.[12] It is for this reason that the United States Geological Survey stopped estimating geographic scope and volume of seed treatment applications in 2015 because the provider of the pesticide use data "discontinued making estimates for seed treatment applications of pesticides because of complexity and uncertainty."[13] *See also* Appendix at 4–6 (indicating that treated seeds is the greatest use of these three neonicotinoids by volume and geographic scope).

---

[11] *See, e.g.* E.g. Poncho Votivo, EPA Reg 264-1109, https://www3.epa.gov/pesticides/chem_search/ppls/000264-01109-20171113.pdf at 7-8.
[12] Unglesbee (2020). "Seed Treatment Confusion." https://www.dtnpf.com/agriculture/web/*A g*/crops/article/2020/03/27/planting-blind-farmers-know-seeds-3. *See also* C. Hitaj et al. (2020). "Sowing Uncertainty: What We do and Don't Know about the Planting of Pesticide-Treated Seed" *BioScience*, Vol. 70, Issue 5, pages 390-403. https://academic.oup.com/bioscience/article-abstract/70/5/390/5805569.
[13] *See, e.g.,* USGS Estimated Annual Agricultural Pesticide Use for Clothianidin: https://water.usgs.gov/nawqa/pnsp/usage/maps/show_map.php?year=2019&map=CLOTHIANIDIN&hilo=L&disp=Clothianidin (red print in left bar).

Completed ESA consultations have resulted in mandatory changes on labels of registered pesticide products to minimize harms to endangered species, underscoring that unregistered treated seeds will avoid mandatory and enforceable label changes. For example, in its biological opinion completing consultation on the insecticides chlorpyrifos, diazinon, and malathion, the National Marine Fisheries Service included terms and conditions that required "applicants with *registrations* for products" containing these pesticides to submit label amendments to EPA within 60 days.[14] These label amendments must include instructions not to apply the product "within 300 m of ESA-listed species habitat" under certain conditions and require the following language at the beginning of the Directions for Use section of all end-use product labels:

> "ENDANGERED SPECIES PROTECTION REQUIREMENTS": It is a Federal offense to use any pesticide in a manner that results in an unauthorized "take" (e.g., kill or otherwise harm) of an endangered species, and certain threatened species, under the Endangered Species Act section 9. When using this product, you must follow the measures contained in the Endangered Species Protection Bulletin for the area in which you are applying the product. You must obtain a Bulletin no earlier than six months before using this product. To obtain Bulletins, consult http://www.epa.gov/espp/, call 1-844-447-3813, or email ESPP@epa.gov. You must use the Bulletin valid for the month in which you will apply the product.[15]

---

[14] NMFS 2022. Revised Conference and Biological Opinion on the Environmental Protections Agency's Registration Review of Pesticide Products containing Chlorpyrifos, Malathion, and Diazinon at 1198 (emphasis added). https://s3.amazonaws.com/media.fisheries.noaa.gov/2022-06/Biological-Opinion-Chlorpyrifos-Malathion-Diazinon-Final-0.pdf.
[15] *Id.* at 1198–1200.

NMFS required EPA to implement the label changes and develop the Endangered Species Protection Bulletins within 18 months, among other terms.[16] One example of these mandatory label changes incorporating mitigation to address the effects of malathion is the registered pesticide Fyfanon 57% EC, EPA Reg. No. 279-3607.[17]

The Endangered Species Protection Bulletins direct the user to requirements to provide mitigation or avoidance within specific geographic areas containing ESA protected species, referred to as Pesticide Use Limitation Areas ("PULAs") in addition to the requirements spelled out on the label. For example, entering EPA Registration Number 279-3607 (Fyfanon 57% EC) on the EPA Bulletins Live Two! site[18] results in numerous PULAs across the country (gray areas), especially for protected coastal fish species:

---

[16] *Id.* at 1200.

[17] EPA 2023. "Registration Review Label Amendments Incorporating Mitigation from the Fish and Wildlife Services (FWS) and the National Marine Fisheries Services (NMFS) Biological Opinions on the Effects of Malathion on Endangered and Threatened Species" at page 5 of the label (adding Endangered Species paragraph). https://www3.epa.gov/pesticides/chem_search/ppls/000279-03607-20230823.pdf.

[18] https://www.epa.gov/endangered-species/bulletins-live-two-view-bulletins.



As an example, one PULA, PULA ID 92 (yellow area), includes required

limitations on use of Fyfanon 57% EC because of the "NMFS BiOps 2024":



The "Printable Bulletin" for use of Fyfanon 57% EC (279-3607) within PULA 92

includes mandatory, legally enforceable limitations on use, such as: certain tank

mixing prohibitions; requirement to maintain a vegetative filter strip between the

field edge and fish habitat; and prohibition on use within so many feet of fish habitat. *See* Printable Bulletin included in Appendix at 7–10.

Limitations on the labels of registered pesticides are mandatory and enforceable. But, as EPA admits, the seed bag tags on unregistered neonicotinoid-treated seeds are not enforceable. This is a significant gap in regulation that will impact the effectiveness of imperative directions for use to protect endangered species. EPA's claim that registration of treated seeds is "redundant" is unfounded.

Respectfully submitted on July 16, 2025,

/s/ *Stephanie M. Parent*
Stephanie M. Parent
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97221
Phone: (971) 717-6404
sparent@biologicaldiversity.org

Counsel for *Amicus Curiae*
Center for Biological Diversity

**CERTIFICATE OF COMPLIANCE**

I am the attorney and certify that this brief contains no more than 7,000 words, including in images, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this amicus brief complies with the word limit of Fed. R. App. P. 29(5) and Ninth Cir. R. 32-1.

July 16, 2025          */s/ Stephanie M. Parent*
                       Counsel for *Amicus Curiae*
                       Center for Biological Diversity

# APPENDIX[19]

---

[19] In the tradition of the so-called "Brandeis brief," *amici* may provide the court with studies and information outside the record and available to the public in order to broaden the court's perspective on pertinent issues. *Asarco, Inc. v. E.P.A.*, 616 F.2d 1153, 1160 (9th Cir. 1980) (accepting information from *amici* scientists consisting of peer-reviewed and publicly available literature).

Table 1. Summary of Species Effects Determinations for Clothianidin (Counts by Taxon).

| Taxon | Step 1 Effects Determinations | | Step 2 Effects Determinations | | Totals |
|---|---|---|---|---|---|
| | No Effect | May Affect | Not Likely to Adversely Affect | Likely to Adversely Affect | |
| Mammals | 1 | 101 | 46 | 55 | 102 |
| Birds | 6 | 102 | 31 | 71 | 108 |
| Amphibians | 0 | 39 | 0 | 39 | 39 |
| Reptiles | 8 | 39 | 13 | 26 | 47 |
| Fish | 4 | 187 | 13 | 174 | 191 |
| Plants | 72 | 878 | 175 | 703 | 950 |
| Aquatic Invertebrates | 151 | 72 | 34 | 38 | 223 |
| Terrestrial Invertebrates | 17 | 144 | 25 | 119 | 161 |
| Total | 259 | 1562 | 337 | 1225 | 1821 |
| Percent of total | 14% | 86% | 19% | 67% | |

EPA Clothianidin Biological Evaluation, *supra* at fn 3.

Table E-3. Number of Listed Species Effects Determinations and Predictions of Likelihood of Jeopardy or Adverse Modification by Taxon for Clothianidin[1].

| Taxon | Number of LAA Species/CH[2] | LAA, No J/AM | LAA, J/AM |
|---|---|---|---|
| Amphibians[2] | 36 | 36 | 0 |
| Aquatic Invertebrates | 34 | 27 | 7 |
| Terrestrial and Aquatic Invertebrates | 11 | 5 | 6 |
| Birds | 71 | 70 | 1 |
| Fish | 113 | 109 | 4 |
| Mammals | 54 | 54 | 0 |
| Plants | 703 | 573 | 130 |
| Reptiles[2] | 26 | 26 | 0 |
| Terrestrial Invertebrates[3] | 103 | 85 | 18 |
| Total Listed Species | 1151 | 985 | 166 |
| | | | |
| Designated Critical Habitat | 410 | 390 | 20 |

[1] CH = critical habitat; LAA = likely to adversely affect; J = jeopardy; AM = adverse modification
[2] "Amphibians" and "Reptiles" include those species that have both a terrestrial and aquatic phase.
[3] "Terrestrial Invertebrates" includes damselflies which have both a terrestrial and aquatic phase.

EPA Draft Jeopardy Predictions, *supra* at fn 6.

**Table 1. Summary of Species Effects Determinations for Imidacloprid (Counts by Taxon).**

| Taxon | Step 1 Effects Determinations | | Step 2 Effects Determinations | | Totals |
|---|---|---|---|---|---|
| | No Effect | May Affect | Not Likely to Adversely Affect | Likely to Adversely Affect | |
| Mammals | 1 | 101 | 32 | 69 | 102 |
| Birds | 0 | 108 | 31 | 77 | 108 |
| Amphibians | 0 | 38 | 0 | 38 | 38 |
| Reptiles | 1 | 46 | 16 | 30 | 47 |
| Fish | 4 | 188 | 13 | 175 | 192 |
| Plants | 49 | 901 | 17 | 884 | 950 |
| Aquatic Invertebrates | 151 | 72 | 33 | 39 | 223 |
| Terrestrial Invertebrates | 3 | 158 | 25 | 133 | 161 |
| **Total** | **209** | **1612** | **167** | **1445** | **1821** |
| **Percent of total** | **11%** | **89%** | **9%** | **79%** | |

EPA Imidacloprid Biological Evaluation, *supra* at fn 4.

**Table E-1. Number of Listed Species Effects Determinations and Predictions of Likelihood of Jeopardy or Adverse Modification by Taxon for Imidacloprid[1].**

| Taxon | Number of LAA Species/CH[2] | LAA, No J/AM | LAA, J/AM |
|---|---|---|---|
| Amphibians[2] | 38 | 38 | 0 |
| Aquatic Invertebrates | 35 | 24 | 11 |
| Terrestrial and Aquatic Invertebrates | 12 | 6 | 6 |
| Birds | 68 | 67 | 1 |
| Fish | 114 | 110 | 4 |
| Mammals | 62 | 62 | 0 |
| Plants | 873 | 715 | 158 |
| Reptiles[2] | 28 | 28 | 0 |
| Terrestrial Invertebrates[3] | 116 | 97 | 19 |
| Total Listed Species | 1346 | 1147 | 199 |
| | | | |
| Designated Critical Habitat | 621 | 591 | 30 |

[1] CH = critical habitat; LAA = likely to adversely affect; J = jeopardy; AM = adverse modification
[2] "Amphibians" and "Reptiles" include those species that have both a terrestrial and aquatic phase.
[3] "Terrestrial Invertebrates" includes damselflies which have both a terrestrial and aquatic phase.

EPA Draft Jeopardy Predictions, *supra* at fn 7.

Table 1. Summary of Species Effects Determinations for Thiamethoxam (Counts by Taxon).

| Taxon | Step 1 Effects Determinations | | Step 2 Effects Determinations | | Totals |
|---|---|---|---|---|---|
| | No Effect | May Affect | Not Likely to Adversely Affect | Likely to Adversely Affect | |
| Mammals | 1 | 101 | 48 | 53 | 102 |
| Birds | 5 | 103 | 32 | 71 | 108 |
| Amphibians | 0 | 38 | 0 | 38 | 38 |
| Reptiles | 8 | 39 | 13 | 26 | 47 |
| Fish | 4 | 190 | 13 | 177 | 194 |
| Plants | 49 | 901 | 41 | 860 | 950 |
| Aquatic Invertebrates | 151 | 70 | 34 | 36 | 221 |
| Terrestrial Invertebrates | 3 | 158 | 23 | 135 | 161 |
| Total | 221 | 1600 | 204 | 1396 | 1821 |
| Percent of total | 12% | 88% | 11% | 77% | |

EPA Thiamethoxam Biological Evaluation, *supra* at fn 5.

Table E-2. Number of Listed Species Effects Determinations and Predictions of Likelihood of Jeopardy or Adverse Modification by Taxon for Thiamethoxam[1].

| Taxon | Number of LAA Species/CH[2] | LAA, No J/AM | LAA, J/AM |
|---|---|---|---|
| Amphibians[2] | 36 | 36 | 0 |
| Aquatic Invertebrates | 34 | 24 | 10 |
| Terrestrial and Aquatic Invertebrates | 11 | 5 | 6 |
| Birds | 71 | 70 | 1 |
| Fish | 112 | 108 | 4 |
| Mammals | 47 | 47 | 0 |
| Plants | 850 | 687 | 163 |
| Reptiles[2] | 26 | 26 | 0 |
| Terrestrial Invertebrates[3] | 119 | 99 | 20 |
| Total Listed Species | 1306 | 1102 | 204 |

EPA Draft Jeopardy Predictions, *supra* at fn 8.

Comparing USGS estimates in 2014 (with seed treatment included) to estimates in 2015 (without seed treatment) indicates that seed treatment is the predominant use of these neonicotinoids. In other words, what may appear to be reductions in the use of these neonicotinoids in 2015 compared to 2014 are not likely reductions, but omissions of use data related to seed treatments because that data was no longer compiled.

For example, the following USGS bar graph shows that as of 2014 about 3.5 million of approximately 3.8 million pounds of estimated use of clothianidin is attributable to treated seeds.[20]



[20] https://water.usgs.gov/nawqa/pnsp/usage/maps/show_map.php?year=2019&map=CLOTHIANIDIN&hilo=L&disp=Clothianidin. Scroll down to bar graph.

The use by volume of imidacloprid and thiamethoxam are similar. About half the estimated two million pounds of imidacloprid used in 2014 was likely treated seeds,[21] and more than one million of the 1.4 million pounds of thiamethoxam estimated used in 2014 were likely treated seeds.[22]

The USGS maps indicate the geographic extent of neonicotinoid uses is predominantly due to treated seeds by comparing the 2014 maps (including estimated treated seed uses) with the 2015 maps (excluding estimated treated seed uses). Pasted below are the clothianidin maps.[23] The 2014 and 2015 maps of estimated uses of imidacloprid[24] and thiamethoxam[25] similarly indicate the treated seed uses account for the greatest use of these neonicotinoids geographically.

---

[21] https://water.usgs.gov/nawqa/pnsp/usage/maps/show_map.php?year=2019&map=IMIDACLOPRID&hilo=L&disp=Imidacloprid. Scroll down to bar graph.
[22] https://water.usgs.gov/nawqa/pnsp/usage/maps/show_map.php?year=2019&map=THIAMETHOXAM&hilo=L&disp=Thiamethoxam. Scroll down to bar graph.
[23] https://water.usgs.gov/nawqa/pnsp/usage/maps/show_map.php?year=2019&map=CLOTHIANIDIN&hilo=L&disp=Clothianidin. Please note that this link goes to the most recently available data to give the "low" estimate for 2019. Clicking back on the year provides maps showing the change in estimated use from 2014 to 2015 when USGS stopped including seed treatment applications.
[24] https://water.usgs.gov/nawqa/pnsp/usage/maps/show_map.php?year=2019&map=IMIDACLOPRID&hilo=L&disp=Imidacloprid. Click to years 2014 and 2015.
[25] https://water.usgs.gov/nawqa/pnsp/usage/maps/show_map.php?year=2019&map=THIAMETHOXAM&hilo=L&disp=Thiamethoxam. Click to 2014 and 2015.



**Estimated Agricultural Use for Clothianidin , 2014**
**EPest-Low**

Estimated use on
agricultural land, in
pounds per square mile

- < 0.03
- 0.03 - 0.21
- 0.22 - 1.02
- > 1.02
- No estimated use



**Estimated Agricultural Use for Clothianidin , 2015**
**EPest-Low**

Estimated use on
agricultural land, in
pounds per square mile

- < 0.03
- 0.03 - 0.21
- 0.22 - 1.02
- > 1.02
- No estimated use

Appendix page 6

# Endangered Species Protection Bulletin



**Application Month:** July 2025
**Product:** FYFANON 57% EC (279-3607)

**1** Areas where pesticide use must be limited are identified on the map. A legend is located beside the map to help pinpoint these locations.



Legend

Limitation Area

**2** Look below at the Pesticide Use Limitation Summary Table. This table lists the user selected Active Ingredient(s) (AIs) or Product(s) with pesticide use limitations on the printed map. Locate the Active Ingredient (AI) or Product you intend to apply in this table and identify the code in the last column. This code indicates the specific limitation associated with that AI or Product. A limitation description for each code can be found below in the Codes and Limitations Table. If multiple Pesticide Use Limitation Areas (PULAs) are visible on the map, these tables provide information for the highlighted PULA.

If you are applying a pesticide that contains more than one Active Ingredient, or multiple Products, then multiple codes may apply. Follow the limitations for all codes when using this pesticide.

This document contains legal requirements for the use of certain pesticides.
Do not modify any text, graphics or coloration or otherwise alter this document.
ESPP Contact: ESPP@epa.gov Phone: 1-844-447-3813
Date Printed: 7/15/2025, 3:55:05 PM

## Pesticide Use Limitation Summary Table

| Product | AI | Use | Method | Form | Code | Last Update |
|---|---|---|---|---|---|---|
| FYFANON 57% EC (279-3607) Alternate: CHEMINOVA MALATHION 57%, FYFANON 57EC MOSQUITO Inactive: MALATHION 57% EMULSIFIABLE LIQUID PREMIUM GRADE | Malathion (NO INERT USE) | All Agricultural Uses | All application methods, except for treatments <0.1 acre | Emulsifiable Concentrate | MA23 | 3/28/2024 |
| FYFANON 57% EC (279-3607) Alternate: CHEMINOVA MALATHION 57%, FYFANON 57EC MOSQUITO Inactive: MALATHION 57% EMULSIFIABLE LIQUID PREMIUM GRADE | Malathion (NO INERT USE) | All Agricultural Uses | All application methods, except for treatments <0.1 acre | Emulsifiable Concentrate | MA24 | 3/28/2024 |
| FYFANON 57% EC (279-3607) Alternate: CHEMINOVA MALATHION 57%, FYFANON 57EC MOSQUITO Inactive: MALATHION 57% EMULSIFIABLE LIQUID PREMIUM GRADE | Malathion (NO INERT USE) | All Agricultural Uses | Groundboom | Emulsifiable Concentrate | OFGB | 3/28/2024 |

This document contains legal requirements for the use of certain pesticides.
Do not modify any text, graphics or coloration or otherwise alter this document.
ESPP Contact: ESPP@epa.gov Phone: 1-844-447-3813
Date Printed: 7/15/2025, 3:55:05 PM

| FYFANON 57% EC (279-3607) Alternate: CHEMINOVA MALATHION 57%, FYFANON 57EC MOSQUITO Inactive: MALATHION 57% EMULSIFIABLE LIQUID PREMIUM GRADE | Malathion (NO INERT USE) | All Agricultural Uses | Airblast | Emulsifiable Concentrate | OFAB | 3/28/2024 |
| FYFANON 57% EC (279-3607) Alternate: CHEMINOVA MALATHION 57%, FYFANON 57EC MOSQUITO Inactive: MALATHION 57% EMULSIFIABLE LIQUID PREMIUM GRADE | Malathion (NO INERT USE) | All Agricultural Uses | Aerial spray | Emulsifiable Concentrate | OFA | 3/28/2024 |

## Codes and Limitations Table

| Code | Limitation |
|------|------------|
| MA23 | Do not apply this product when tank mixing with other neurotoxic pesticides (i.e., organophosphate, carbamate, pyrethroid, and neonicotinoid pesticides) at application rates that exceed 50 percent the maximum labeled rate of any pesticide active ingredient used in the tank mixture. |
| MA24 | For labeled agricultural uses (i.e., excludes wide area adult mosquito control applications) at application rates less than or equal to 1.5 lbs ai/acre, maintain a vegetative filter strip of at least 16 feet between the field edge and fish habitat. For application rates greater than 1.5 lbs ai/acre, maintain a vegetative filter strip 33 feet from fish habitat OR maintain a 16 feet vegetative filter strip between field edge and fish habitat AND one of the following: (A) implement conservation tillage, low-till, or no-till practices on the area of application, (B) maintain a functional terrace system on the area of application, or (C) maintain functional water and sediment control basins for the area of application. |

This document contains legal requirements for the use of certain pesticides.
Do not modify any text, graphics or coloration or otherwise alter this document.
ESPP Contact: ESPP@epa.gov Phone: 1-844-447-3813
Date Printed: 7/15/2025, 3:55:05 PM

# Endangered Species Protection Bulletin

| | |
|---|---|
| OFGB | For labeled agricultural uses (i.e., excludes wide area adult mosquito control applications), salmonid, sturgeon, and eulachon habitat (referred to below as "fish habitat") is defined as surface waters accessible to salmon, sturgeon, and eulachon, including but not limited to lakes, reservoirs, rivers, streams, inundated floodplains, wetlands or natural ponds, estuaries, and marine near-shore areas. When determining buffer distances, measure from the ordinary high-water mark for rivers, streams, lakes, and tidally influenced waters. For flooded habitats (inundated floodplains, e.g., Yolo Bypass), measure from the edge of the inundated area. For non-ULV groundboom applications, do not apply within 25 feet of fish habitat. When wind is blowing toward fish habitat, do not apply within (A) 25 feet of fish habitat if application rate is 0.5 lb a.i./A or less or (B) 33 feet of fish habitat if application rate is greater than 0.5 lb a.i./A. |
| OFAB | For labeled agricultural uses (i.e., excludes wide area adult mosquito control applications), salmonid, sturgeon, and eulachon habitat (referred to below as "fish habitat") is defined as surface waters accessible to salmon, sturgeon, and eulachon, including but not limited to lakes, reservoirs, rivers, streams, inundated floodplains, wetlands or natural ponds, estuaries, and marine near-shore areas. When determining buffer distances, measure from the ordinary high-water mark for rivers, streams, lakes, and tidally influenced waters. For flooded habitats (inundated floodplains, e.g., Yolo Bypass), measure from the edge of the inundated area. If this product label includes non-ULV airblast applications and you select this method, do not apply within 25 feet of fish habitat. When wind is blowing toward fish habitat, do not apply within (A) 33 feet of fish habitat if application rate is less than or equal to 1.5 lb a.i./A or (B) 66 feet of fish habitat if application rate is greater than 1.5 lb a.i./A. |
| OFA | For labeled agricultural uses (i.e., excludes wide area adult mosquito control applications), salmonid, sturgeon, and eulachon habitat (referred to below as "fish habitat") is defined as surface waters accessible to salmon, sturgeon, and eulachon, including but not limited to lakes, reservoirs, rivers, streams, inundated floodplains, wetlands or natural ponds, estuaries, and marine near-shore areas. When determining buffer distances, measure from the ordinary high-water mark for rivers, streams, lakes, and tidally influenced waters. For flooded habitats (inundated floodplains, e.g., Yolo Bypass), measure from the edge of the inundated area. If this product label includes non-ULV aerial applications and you select this method, do not apply within 50 feet of fish habitat. When wind is blowing toward fish habitat, do not apply within (A) 66 feet of fish habitat if application rate is less than or equal to 1.5 lb a.i./A or (B) 328 feet of fish habitat if application rate is greater than 1.5 lb a.i./A. |

This document contains legal requirements for the use of certain pesticides.
Do not modify any text, graphics or coloration or otherwise alter this document.
ESPP Contact: ESPP@epa.gov Phone: 1-844-447-3813
Date Printed: 7/15/2025, 3:55:05 PM